**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 20-cv-0549-WJM-STV

BRIAN ESTRADA,

      Plaintiff,

v.

JACOB SMART, in his individual capacity,

      Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

---

In this prisoner's civil rights action brought pursuant to 42 U.S.C. § 1983, Plaintiff Brian Estrada ("Plaintiff") claims that Defendant Jacob Smart ("Defendant"), a correctional officer of the Colorado Department of Corrections used excessive force in violation of the Eighth Amendment to the Constitution while apprehending him during an escape attempt. This matter is before the Court on Defendant's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss") (ECF No. 30). For the reasons that follow, the Motion to Dismiss is denied.

## I. BACKGROUND

Plaintiff has been, at all relevant times, an individual incarcerated at Sterling Correctional Facility in Sterling, Colorado. (Amended Complaint, ECF No. 25 ¶ 2.[1]) This action arises out of an incident on May 30, 2018, when Plaintiff was attending a pretrial conference relating to his criminal prosecution at the Logan County Courthouse.

---

[1] Facts are taken from Plaintiff's Amended Complaint and are deemed true for the purposes of this Order.

(*Id.* ¶ 4.)  Plaintiff was bound with shackles on his wrists and ankles, which were connected to his waist to restrict his range of motion.  (*Id.* ¶ 28.)  In addition to Defendant, three other correctional officers were present in the courtroom during the conference: Officer Johnson, Officer McIntosh and Officer Taylor.  (*Id.* ¶ 12.)  The courtroom is on the second floor of the courthouse, and the only exit is by elevator or stairs, which are approximately 90 feet down a hallway from the courtroom.  (*Id.* ¶¶ 13–14.)  A security guard was stationed at the exit to the courthouse.  (*Id.* ¶ 15.)

During the proceeding, Plaintiff attempted to escape from custody.  (*Id.* ¶ 29–30.)  He stood up from where he was seated at the jury box and moved "a few steps" toward the courtroom exit.  (*Id.* ¶ 29–30.)  Officer Taylor pushed Plaintiff with one of her hands, and he fell to the ground.  (*Id.* ¶ 32.)  Plaintiff stood up, however, and again attempted to exit the courtroom. (*Id.* ¶ 40.)

As Plaintiff moved toward the door, Defendant drew his firearm and fired at Plaintiff.  (*Id.* ¶ 44.)  The first shot struck Plaintiff in his midsection.  (*Id.* ¶ 45.)  Plaintiff continued toward the exit of the courtroom.  (*Id.*)  As Defendant and the three other officers pursued Plaintiff, Defendant fired three more shots.  (*Id.* ¶ 47.)  The bullets struck Plaintiff on his chest, hand, and inner arm.  (*Id.* ¶ 79.)  Plaintiff then "stumbled through the vestibule and collapsed in the hallway outside the courtroom," where Defendant and the other officers apprehended him.  (*Id.* ¶ 52.)  Plaintiff sustained four gunshot wounds total, and a fracture of his right humerus.  (*Id.* ¶ 79.)

Plaintiff filed his initial Complaint on February 27, 2020 (ECF No. 1).  He filed an Amended Complaint on May 5, 2020 (ECF No. 25), which is the operative complaint in

this action.  Defendant filed his Motion to Dismiss on May 19, 2020 (ECF No. 30).

Plaintiff filed a Response on June 18, 2020 (ECF No. 37) and Defendant filed a Reply to

Plaintiff's Response on July 16, 2020 (ECF No. 40).

## II. LEGAL STANDARD

### A.    Rule 16(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

cause of action for "failure to state a claim upon which relief can be granted."  The Rule

12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded

factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at*

*Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a

motion, the inquiry is "whether the complaint contains 'enough facts to state a claim to

relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously

studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect

the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir.

2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed

even if it strikes a savvy judge that actual proof of those facts is improbable, and that a

recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).

### B.    Qualified Immunity on Rule 12 Review

"In civil rights actions seeking damages from governmental officials, those

officials may raise the affirmative defense of qualified immunity, which protects all but

the plainly incompetent or those who knowingly violate the law."  *Holland ex rel.*

*Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (internal quotation marks and citation omitted).  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).

Qualified immunity is "an immunity from suit rather than a mere defense to liability . . . [and] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 512 (1985).  Once a defendant asserts qualified immunity, the burden shifts to the plaintiff to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."  *Henderson v. Glanz*, 813 F.3d 938, 951 (10th Cir. 2015) (citations omitted).  "Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry."  *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).

### III. ANALYSIS

Plaintiff alleges that Defendant violated the Eighth Amendment to the Constitution, which prohibits the use of excessive force on convicted prisoners.  (ECF No. 25 ¶¶ 83–117.)  Specifically, Plaintiff contends that Defendant used greater force than was necessary to prevent his escape.  (*Id.* ¶ 85.)  He brings this action pursuant to 42 U.S.C. § 1983.  (*Id.*)  Defendant moves to dismiss, asserting that the doctrine of qualified immunity bars Plaintiff's suit against him.  (ECF No. 30 at 1.)  As such, Plaintiff carries the

burden of showing that Defendant violated his right under the Eighth Amendment, and that such right was clearly established at the time of the violation. *Henderson*, 813 F.3d at 951.

## A.   Violation of Rights: Eighth Amendment

Plaintiff asserts a violation of his Eighth Amendment right to be free from excessive force. (ECF No. 25 ¶¶ 83–117.) In analyzing an excessive force claim, courts conduct a two-part inquiry: "(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018).

An officer acts with a sufficiently culpable state of mind if he uses force "maliciously and sadistically for the purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). To determine whether the use of force was in good faith, courts consider the need for force, and whether the officer used a disproportionate amount of force. *Id.* at 937. Courts consider "whether the use of force could plausibly have been thought necessary," or if the defendant's actions were "tantamount to a knowing willingness" that the unjustified harm occur. *Id.* at 321. In conducting this inquiry, courts may also consider "the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Green v. Denning*, 465 F. App'x 804, 807 (10th Cir. 2012) (quoting *Hudson*, 503 U.S. at 7).

Plaintiff alleges that his hands and feet were bound with shackles, that he was

unarmed, that he made no attempt to take an officer's weapon, that a female officer was able to push him to the floor with one hand, that he was stumbling toward the door with three officers in pursuit when Defendant shot him four times, and that he would have had to travel through a hallway and down two floors in order to even exit the building. (ECF No. 25 ¶¶ 92–112.)  Plaintiff alleges that, during his escape, Officer McIntosh had reached for his Taser.  (*Id.* ¶ 70.)  He alleges that Officer Johnson expressed shock that Defendant had used his firearm.  (*Id.* ¶ 51.)  Plaintiff also alleges that the judge presiding during the incident later stated that Plaintiff was not likely to travel far before being apprehended.  (*Id.* ¶ 24.)

The reactions of individuals present during the incident, which, significantly, include those of fellow officers, bolster Plaintiff's assertion that Defendant's use of force "could not plausibly have been thought necessary," *Whitley*, 475 U.S. at 321.  Further, the fact that the other officers attempted to push or use a Taser on Plaintiff rather than resorting to deadly force indicates the availability of efforts to "temper the severity of a forceful response," *Green*, 465 F. App'x at 807, efforts which Defendant made no effort to undertake.  Defendant's immediate resort to his firearm, and the large number of shots discharged, evince little to no consideration of whether such force was necessary, nor any effort to minimize the force used.  The Court finds that given the totality of these circumstances, the Plaintiff has met his burden of alleging facts that establish that Defendant acted maliciously and sadistically, thereby satisfying the subjective prong of the inquiry.

The objective prong of the excessive force inquiry is "contextual and responsive to

6

contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Contemporary standards of decency are always violated when an official uses force

"maliciously and sadistically." *Id.* at 9.    As discussed, Plaintiff alleges that Defendant's

use of force was greater than could have reasonably thought necessary, to the point of

establishing a malicious and sadistic state of mind.  Accordingly, Plaintiff has established

that Defendant's alleged wrongdoing was objectively harmful enough to establish a

constitutional violation.

## B.    Rights Clearly Established

Even if a constitutional violation has occurred, a plaintiff still must show that the

right violated was clearly established.  *Redmond*, 882 F.3d at 937.  For a right to be

clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or

the clearly established weight of authority from other courts must have found the law to

be as the plaintiff maintains."  *Weiss v. Casper*, 593 F.3d 1163, 1167 (10th Cir.2010)

(quoting *Cortez v. McCauley*, 478 F.3d 1108, 1114–15 (10th Cir. 2007)).  The inquiry

should not be "a scavenger hunt for prior cases with precisely the same facts" but instead

"whether the law put officials on fair notice that the described conduct was

unconstitutional."  *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004) (citing *Hope v.

Pelzer*, 536 U.S. 730, 741 (2002)).  Thus, "[t]he relevant, dispositive inquiry in

determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted."  *Thomas

v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2004).

Defendant posits that no clearly established law indicates that his conduct may

have violated Plaintiff's rights.  (ECF No. 30 at 9.)  He invokes four out-of-circuit cases in which qualified immunity barred suit against defendants who had similarly used firearms on prisoners attempting to escape from custody: *Gravely v. Madden*, 142 F.3d 345 (6th Cir. 1998); *Kinney v. Indiana Youth Ctr.*, 950 F.2d 462 (7th Cir. 1991); *Henry v. Perry*, 866 F.2d 657 (3d Cir. 1989); and *Clark v. Evans*, 840 F.2d 876 (11th Cir. 1988).  (*Id.* at 10–11.)

Unfortunately for Defendant, all of these cases are easily distinguishable.  In each one of these cases, the escaping prisoners were not bound, and, in one case, the plaintiff was armed with a weapon.  (ECF No. 35 at 13–15; *see also Gravely*, 142 F.3d at 349; *Kinney*, 950 F.2d at 466; *Henry*, 866 F.2d at 559; *Clark*, 840 F.2d at 879.)  The defendants in these cases all asserted that deadly force was the only way to stop the plaintiffs from escaping, given that, unlike as is manifestly the case here, *they were not otherwise restrained*.  *Gravely*, 142 F.3d at 349; *Kinney*, 950 F.2d at 466; *Henry*, 866 F.2d at 559; *Clark*, 840 F.2d at 879.

Plaintiff focuses instead on the violative nature of using deadly force on a prisoner who is bound or restrained.  (ECF No. 35 at 12.)  He relies primarily on three cases: *Hudson v. McMillian*, 503 U.S. 1 (1992); *Miller v. Glanz*, 948 F.2d 1562 (10th Cir. 1991); and *Holmes v. Dailey*, 1998 WL 709621 (D. Kan. Aug. 14, 1998).

In *Hudson*, prison officials beat a prisoner whose hands and feet were bound. *Hudson*, 503 U.S. at 4.  The Supreme Court reversed the Fifth Circuit's dismissal of the action on qualified immunity grounds, in part because the prisoner presented no threat given his subdued state.  *Id.* at 10–12.  In *Miller*, the Tenth Circuit denied qualified

8

immunity to prison officials who similarly beat a bound prisoner.  *Miller*, 948 F.2d at 1564–65.  In both cases, the courts held that the plaintiffs' allegations were sufficient to state Eighth Amendment claims.  *Hudson*, 503 U.S. at 10–12; *Miller*, 948 F.2d at 1567.  In the Court's judgment, these cases stand clearly for the proposition that an officer may not use deadly force on an unarmed, restrained prisoner who has no realistic possibility of escaping or threatening the public.

While a single district court decision may not in itself render law clearly established, *Holmes* is instructive and persuasive as well.  In *Holmes*, while being transported from the prison to a courthouse, the plaintiff attempted to escape from custody.  *Holmes*, 1998 WL 709621, at *1.  During the drive to the courthouse, the plaintiff unlocked the cuffs on his hands and feet, and when the prison official opened the door to the vehicle, the plaintiff "bolted" into a densely populated area of Kansas City.  *Id.*  The defendant shot the plaintiff once in the leg, and then shot him again, striking him in the chest and leaving him paralyzed from the chest down.  *Id.*  The *Holmes* court noted that the defendant likely could have overtaken the plaintiff after the initial shot, but nonetheless fired again, which amounted to malicious and sadistic conduct.  *Id.* at *3.  It further stated that the right to be free from a malicious and sadistic attack is clearly established.  *Id.* at *4 (citing Martin A. Schwartz & John E. Kirklin, *Section 1983 Litigation*, § 3.17, at 287 (1997)).  As a consequence, the *Holmes* court denied the defendant's motion for summary judgment as to the plaintiff's excessive force claim, concluding that the plaintiff had presented evidence, which, if believed, overcame the defendant's qualified immunity defense.  *Id.* at *3–*4.

In the context of the applicability of the doctrine of qualified immunity, the Supreme Court has cautioned against "rigid overreliance on factual similarity" in determining whether law is clearly established. *Hope*, 536 U.S. at 742. An official can be on notice that conduct is unlawful "even in novel factual circumstances." *Id.* at 741–42. (concluding that officials who tied a prisoner to a hitching post for seven hours violated clearly established rights "of which a reasonable person would have known").

Despite the escape attempt, Plaintiff's claim turns largely on the fact that he was heavily restrained and unarmed, and that a reasonable trier of fact could conclude that deadly force was not necessary to apprehend him after his ill-advised attempt to flee. (ECF No. 25 ¶¶ 92–112.) This detail is significant, and the Court concludes that this case is analogous to *Hudson* and *Miller*, in which the courts found facts sufficient to state an excessive force claim where prisoners were beaten while handcuffed. *Hudson*, 503 U.S. at 10–12; *Miller*, 948 F.2d at 1567. Further, *Holmes* emphasizes that even if deadly force may be warranted to apprehend an escaping prisoner, there is a limit to repeated use of such force when the prisoner has been subdued. *See Holmes*, 1998 WL 709621, at *3–*4.

Plaintiff alleges that he was restrained by shackles on both his hands and his feet, restraints which significantly limited his mobility, to the point where a one-handed push by a female officer caused him to fall to the floor. (ECF No. 25 ¶ 32.) The Court finds that shooting an unarmed individual as heavily restrained as was the Plaintiff here four times was patently unnecessary to prevent his escape or any harm to the public. (*Id.* ¶ 59.) Defendant should have been on notice that use of deadly force on an unarmed prisoner

10

restrained in the manner as was Plaintiff would violate Plaintiff's Eighth Amendment right to be free of the use of excessive force, particularly where, as here, the facts plausibly alleged clearly show that deadly force was not the only way to prevent Plaintiff's escape. Accordingly, Plaintiff has pled facts sufficient to overcome Defendant's assertion of qualified immunity, and as a consequence Defendant's Motion to Dismiss will be denied.

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Defendant's Motion to Dismiss is DENIED;

2.      The stay of discovery (ECF No. 33) is LIFTED; and

3.      No later than **January 22, 2021**, the parties shall contact the Chambers of Magistrate Judge Scott T. Varholak to schedule a Status Conference, or such other proceeding as Judge Varholak decides is appropriate in order to move this litigation forward.

Dated this 20th day of January, 2021.

BY THE COURT:

William J. Martinez
United States District Judge

11