IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 20-cv-0549-WJM-STV

BRIAN ESTRADA,

    Plaintiff,

v.

JACOB SMART,

    Defendant.

**ORDER GRANTING DEFENDANT'S FIRST MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

Before the Court is Defendant Jacob Smart's First Motion for Summary Judgment for Failure to Exhaust Administrative Remedies ("Motion"). (ECF No. 65.) Plaintiff Brian Estrada filed a response. (ECF No. 71.) Defendant filed a reply. (ECF No. 74.)

The Court determines that there are no factual disputes material to the issue of exhaustion, and therefore, the Court need not conduct an evidentiary hearing to resolve the Motion. For the following reasons, the Motion is granted.

**I. LEGAL STANDARD**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v.*

*Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. MATERIAL FACTS[1]

On May 30, 2018, Plaintiff was a convicted inmate in the custody of the Colorado Department of Corrections ("CDOC").  (ECF No. 65 ¶ 1.)  Defendant is a correctional officer with the CDOC.  (ECF No. 25 ¶ 2.)  Plaintiff alleges that on May 30, 2018, Defendant subjected him to excessive force in violation of the Eighth Amendment when he shot Plaintiff as he was attempting to escape from the Logan County Courthouse. (ECF No. 65 at 1 ¶ 2.) (the "May 2018 Shooting").  Plaintiff was incarcerated in the Logan County Jail when he filed this lawsuit on February 27, 2020.  (ECF No. 65-1 at 6–7.)

Anthony DeCesaro is the Step 3 Grievance Officer for the CDOC and the custodian of records for Step 3 grievances.  (ECF No. 65-2 at 1 ¶¶ 1, 3.)  The CDOC provides inmates with administrative remedies pursuant to a three-step grievance

---

[1] The following factual summary is largely based on the briefing on the Motion and documents submitted in support thereof.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.  Facts disputed by the parties are noted as such.

process governed by Administrative Regulation ("AR") 850-04.  (*Id.* ¶ 5; ECF No. 65-2 at 5–21.)  If an inmate is not satisfied with the result of the Step 1 grievance, he must file a Step 2 grievance form concerning the issue within 5 days of receipt of the written response to the Step 1 grievance.  (ECF No. 65-2 at 2 ¶ 7; AR 850-04(IV)(F)(1)(d)).  Likewise, if an inmate is unsatisfied with the response to his Step 2 grievance, he must file a Step 3 grievance within 5 days of receipt of the written response to the Step 2 grievance.  (ECF No. 65-2 at 2 ¶ 7.)  The Step 3 grievance is the final step in the grievance process, and the Step 3 response is the final agency action.  (*Id.* ¶ 8.)

According to Defendant, inmates within the CDOC may file grievances regarding a broad range of topics, including, but not limited to, actions by CDOC employees that affect the inmate personally, such as assertions that they have been subjected to excessive force by CDOC employees in violation of the Eighth Amendment.  (*Id.* ¶ 11.)  Further, Defendant asserts that inmates may also file grievances regarding incidents that occur outside of the facility while in the custody of the CDOC, such as during transport to court appearances or medical visits.  (*Id.*)  To exhaust administrative remedies, Defendant states that Plaintiff was required to file Step 1, 2, and 3 grievances about the May 2018 Shooting in accordance with AR 850-04's procedural rules governing the grievance process before filing suit. (*Id.* ¶ 16.)

Plaintiff disputes the fact that the CDOC's grievance policy applies to incidents occurring *outside* of CDOC facilities, such as a county courthouse, where the incident at issue occurred.  (ECF No. 71 at 2 ¶ 8.)  For support, he points to the language of the policy that says

> [t]he CDOC policy in effect from November 15, 2017 through December 1, 2018 provides that "Offenders will be entitled to

3

> invoke this grievance procedure for a broad range of complaints including, but not limited to: policies, conditions, and incidents **within the facility** that affect the offender personally" and does not mention covering any incidents outside of the facility.

(*Id.* ¶ 8(a) (emphasis added by Plaintiff).)

In his reply, Defendant points out that CDOC policy does mention covering incidents outside the facility in the context of who the grievance procedure is made available to in AR 850-04(IV)(A)(2).  To wit, the AR provides that "[t]he grievance procedure is available only to offenders sentenced to the DOC.  This includes DOC offenders housed in private facilities and offenders who have been released to parole, community, or ISP supervision.  The DOC grievance procedure is not available to offenders currently housed outside of Colorado, pursuant to the Colorado Interstate Corrections Compact."  (ECF No. 74 at 3; ECF No. 65-2 at 6.)

DeCesaro reviewed the CDOC's records concerning Plaintiff's grievances to determine whether he exhausted the grievance process with respect to his allegations against Defendant.  (ECF No. 65-2 at 3 ¶ 17.)   DeCesaro found that Plaintiff did not file any grievances between May 1, 2018 to May 30, 2019 regarding the May 2018 Shooting.  (*Id.* ¶ 18.)  During that timeframe, Plaintiff filed three grievances, none of which pertain to Defendant's alleged use of excessive force.  (*Id.*)

### III. ANALYSIS

A.   **The Prison Litigation Reform Act Framework**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

4

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust available remedies, but need not exhaust unavailable ones. *Ross v. Blake*, 578 U.S. 632, 642 (2016). A prisoner is required to exhaust only those grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Booth v. Churner*, 532 U.S. 731, 738 (2001). The PLRA's exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003); *see also Williams v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

A prisoner's failure to exhaust mandatory administrative remedies under the PLRA is an affirmative defense that a defendant must raise, and it normally cannot be resolved by a Federal Rule of Civil Procedure 12(b)(6) motion. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Toevs v. Quinn*, 2017 WL 1055314, at *3 (D. Colo. Mar. 21, 2017). Instead, a court presented with an exhaustion defense usually must consider the issue under the Rule 56 summary judgment framework. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). When a defendant moves for summary judgment based on an affirmative defense, such as the defense of exhaustion, that defendant bears the burden to demonstrate the absence of any disputed fact as to the affirmative defense asserted. *See Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011). The burden then will shift to the plaintiff to "demonstrate with specificity the existence of a disputed fact" as to the affirmative defense in question. *See Hutchinson*

*v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).

Unlike in a typical summary judgment proceeding, factual disputes regarding exhaustion of administrative remedies must be resolved by the trial court because they are not triable to a jury. *See Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008) ("Juries decide cases, not issues of judicial traffic control. Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to [do so]."). In other words, summary judgment in the PLRA exhaustion context is different than summary judgment generally; in the latter, a material factual dispute is for a jury to decide, whereas in the former, the Court must resolve such disputes. *Id.*

While the Tenth Circuit has not specifically instructed district courts as to how they should resolve factual disputes in the context of exhaustion, other circuits have. (*See* ECF No. 65 at 5.) Those jurisdictions are virtually uniform in holding that because there is no right to a jury trial on factual issues pertaining to exhaustion, the trial court—not a jury—should act as factfinder and resolve any factual disputes as to whether the plaintiff properly exhausted administrative remedies, rather than delegating resolution of those factual disputes to the jury by construing them in favor of the non-moving party, as is typical at the summary judgment stage. *See Albino v. Baca*, 747 F.3d 1162, 1170–71 (9th Cir. 2014); *Small v. Camden Cnty.*, 728 F.3d 265, 270 (3d Cir. 2013); *Messa v. Goord*, 652 F.3d 305, 309–10 (2d Cir. 2011); *Dillon v. Rogers*, 596 F.3d 260, 271, 273 (5th Cir. 2010); *Pavey*, 544 F.3d at 741; *Bryant v. Rich*, 530 F.3d 1368, 1373–74 (11th Cir. 2008). According to that authority, district courts should conduct an evidentiary hearing to resolve factual disputes material to the issue of exhaustion before

the conclusion of pretrial discovery.  *See, e.g.*, *Pavey*, 544 F.3d at 742 (crafting procedures for trial courts to conduct an evidentiary hearing to resolve disputed factual issues and decide questions of exhaustion before pretrial discovery).

Other district judges within the District of Colorado have also determined that they must "allow limited discovery on the exhaustion issue if appropriate, hold a hearing and resolve any factual disputes material to the issue."  *Colbruno v. Diggins*, 2018 WL 10215848, at *5 (D. Colo. Jan. 31, 2018), *aff'd sub nom*. *Colbruno v. Kessler*, 928 F.3d 1155 (10th Cir. 2019); *see also Carbajal v. Keefer*, 2017 WL 4297343, at *7 (D. Colo. Sept. 27, 2017) (holding that where "issues of fact . . . preclude summary judgment [as to exhaustion], it is necessary to schedule an evidentiary hearing to determine whether plaintiff has exhausted his administrative remedies").

### B.     Application to this Lawsuit

In the Motion, Defendant argues that because Plaintiff was incarcerated in the Logan County Jail at the time the incident occurred, this lawsuit is subject to the administrative exhaustion requirement of the PLRA.  (ECF No. 65 at 1.)  Defendant further argues that the record shows that Plaintiff failed to exhaust his available administrative remedies as the PLRA requires before filing this lawsuit, and therefore, Defendant is entitled to summary judgment.  (*Id.* at 1–2.)

By contrast, Plaintiff argues that he did not have an available remedy for incidents occurring *outside* of the CDOC facility, and therefore he was not required to exhaust administrative remedies before filing suit regarding the incident at the Logan County Courthouse.  (ECF No. 71 at 6.)  He primarily relies on the language in AR 850-04 which provides that "[o]ffenders will be entitled to invoke this grievance procedure for a broad range of complaints including, but not limited to: policies, conditions, and

7

incidents *within the facility* that affect the offender personally" and argues that AR 850-04 does not mention covering any incidents outside of the facility. (*Id.* at 8(a) (emphasis added by Plaintiff).)

According to Plaintiff, "the CDOC policy in effect on May 30, 2018 defined the boundaries of proper exhaustion—and those included incidents within the facility—not those outside of the facility." (*Id.*) He contends that his interpretation of the CDOC policy "cannot be rejected at this stage in the proceedings where Defendant bears the burden of proof and all inferences must be drawn in [his favor]." (*Id.*) Thus, Plaintiff contends that he was not required to submit grievances regarding Defendant's alleged use of deadly force inside the Logan County Courthouse—a location outside of the CDOC facility—because there was no available remedy for that conduct according to the CDOC policy in effect at the time. (*Id.*)

The PLRA provides that "a prisoner confined in any jail, prison, or other correctional facility" may not bring an "action . . . with respect to prison conditions under section 1983 . . . " if he has not first exhausted his administrative remedies. *Dmytryszyn v. Hickox*, 172 F.3d 62 (10th Cir. 1999) (unpublished table decision) (quoting 42 U.S.C. § 1997e(a) (Supp. 1998)). Regarding the phrase "civil action with respect to prison conditions," the PLRA defines it as "any civil proceeding arising under Federal law with respect to the conditions of confinement *or the effects of actions by government officials on the lives of persons confined in prison* but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison." 18 U.S.C. § 3626(g) (Supp. 1998) (emphasis added); *see Dmytryszyn*, 172 F.3d at 62.

Further, "[t]he PLRA's exhaustion requirement applies to all inmate suits about

8

prison life, *irrespective of the type of wrong* the prisoner alleges." *Apodaca v. Franco*, 2017 WL 6759099, at *4 (D.N.M. Dec. 29, 2017) (emphasis added), *aff'd*, 737 F. App'x 428 (10th Cir. 2018) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2001)).  The exhaustion requirement remains a prerequisite to suit even where an inmate's suit requests relief that is not available through a grievance proceeding.  *Porter*, 534 U.S. 516, 524 (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)).  Confusion about the grievance process does not excuse failure to comply with that process.  *Beals v. Jay*, 730 F. App'x 633, 637 (10th Cir. 2018) (citing *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.")); *Hobbs v. Okla. State Penitentiary*, 673 F. App'x 837, 841 (10th Cir. 2016) (applying this concept to uphold dismissal of a § 1983 action based on a prisoner's failure to exhaust).

On this record, the Court finds that the PLRA's exhaustion requirement applies to Plaintiff's lawsuit.  It is undisputed that Plaintiff was a convicted inmate in the CDOC when Defendant shot him while trying to escape from the courthouse.  (ECF No. 65 at 1 ¶ 1; ECF No. 71 at 2 ¶ 1.)  Further, Plaintiff admits that he was confined in the Logan County Jail when he filed this lawsuit on February 27, 2020.  (ECF No. 65 at 1 ¶ 7; ECF No. 71 at 2 ¶ 4).  Therefore, the remaining issue the Court must decide is whether the PLRA required Plaintiff to utilize the grievance process set forth in AR 850-04 and exhaust his administrative remedies before filing this lawsuit.

The Supreme Court instructs that "[c]ompliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.  Further, "[t]he level of detail necessary in a grievance to comply with the grievance

9

procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* In light of the Supreme Court's teachings, the Court first looks to the CDOC's grievance procedure set forth in AR 850-04 to examine the boundaries of proper exhaustion.

1. <u>Language of AR 850-04</u>

AR 850-04's language explaining the substance and format of a grievance is critical to the Court's analysis:

> D. Grievance Substance and Format:
>
> 1. Offenders will be entitled to invoke this grievance procedure for a broad range of complaints *including, but not limited to*: policies, conditions, and incidents within the facility that affect the offender personally; actions by employees and offenders and for resolving offender issues relating to health care concerns [4-4394].
>
> 2. This grievance procedure may *not* be used to seek review of the following:
>
>> a. Code of Penal Discipline convictions, restrictive housing placement, Parole Board decisions, and decisions of the Reading Committee have exclusive appeal procedures.
>>
>> b. Classification is entirely at the discretion of the administrative head and internal classification committee of each facility.
>>
>> c. Sex offender designation and sentence computation arise from judicial proceedings involving individual offenders and require judicial review and adjustments.
>>
>> d. Parole Board Appeals, if available, are governed by the enacted Rules and Regulations of the parole board.
>>
>> e. Sentence computation.
>>
>> f. Decisions of the Step 3 grievance officer.
>>
>> g. Requests for records pursuant to the Colorado Open

> Records Act and the Criminal Justice Records Act may
> not be made using the grievance process. Allegations of
> improper denial of an open record request are not
> grievable. The statue provides the mechanism for relief
> in these cases.
>
> h. Facility placement, unit, cell and bunk assignment
> (including protective custody as those decisions are
> guided by AR 650-02, Protective Custody)
>
> i. Security threat groups (STG) status[.]

(ECF No. 65-2 at 8 (emphasis added).) Of particular consequence is the fact that AR 850-04 explicitly states that the grievance procedure includes issues that occur within the facility, but is *not limited to* them. Moreover, the phrase "actions by employees and offenders" is not placed within the previous portion of the paragraph which describes incidents within the facility, indicating that employees' actions need not necessarily occur within the facility to be covered by AR 850-04. Finally, the list of actions that the grievance procedure does not cover notably does not include incidents occurring outside the prison, quite clearly implying that the procedure *is* available for such incidents.

Crucially, Plaintiff has not offered any convincing evidence to support his interpretation of AR 850-04. He points to the fact that Sterling Correctional Facility Offender Orientation Memorandum ("Memorandum") "states nothing about the grievance policy or procedure covering incidents that occur outside of the facility and inmates must rely on the policy in AR 850-04(IV)(D)(1), which only addresses 'incidents within the facility.'" (ECF No. 71 at 3; ECF No. 71-1.) He also highlights that the Sterling Correctional Facility New Arrival Memorandum Orientation Video ("Video") "states nothing about the grievance policy or procedure covering incidents that occur

11

outside of the facility and inmates must rely on the policy in AR 850-04(IV)(D)(1), which only addresses 'incidents within the facility.'" (ECF No. 71 at 4; ECF No. 71-2.)

The crux of this particular dispute is for the Court to decide, not the jury. Having examined AR 850-04, the Memorandum, and the Video and drawing all inferences in Plaintiff's favor, the Court cannot conclude that a genuine issue of material fact exists based on the evidence upon which Plaintiff relies. While it may be true that the Memorandum and Video do not explicitly state that an inmate must file a grievance for incidents occurring outside the facility, that is not evidence sufficient to create a genuine issue of material fact on this issue—particularly in light of the language in AR 850-04 that the Court analyzed above.

### 2. DeCesaro Declaration

The Court also considers the Declaration of Anthony DeCesaro ("Declaration").[2] (ECF No. 65-2.) In his Declaration, DeCesaro states that "[i]nmates may also file grievances regarding incidents that occur outside of the facility while they are in the custody of the CDOC, such as during transport to court appearances or medical visits." (*Id.* ¶ 11 (citing AR 850-04(IV)(D)(1)-(2)).) While Plaintiff argues that DeCesaro's

---

[2] Plaintiff takes issue with the Declaration, stating that "unsubstantiated allegations such as the one made by Mr. DeCesaro in his affidavit carry no probative weight in summary judgment proceedings." (ECF No. 71 at 9.) He also contends that the affidavit "is not supported by any evidence and actually contradicts the CDOC policy." (*Id.* at 10.)

However, the Tenth Circuit has found that "[a]t the summary judgment stage, evidence need not be submitted 'in a form that would be admissible at trial.'" *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Parties may, for example, submit affidavits in support of summary judgment, despite the fact that affidavits are often inadmissible at trial as hearsay, on the theory that the evidence may ultimately be presented at trial in an admissible form." *Id.* (citing *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005)).

Because DeCesaro could present evidence at trial to confirm his statements, the Court may—and does—consider them at the summary judgment stage.

statement is the "**opposite** of the policy's clear language regarding the grievance policy covering incidents within the facility" (ECF No. 71 at 9 (emphasis added by Plaintiff), the Court disagrees. His statement is consistent with the Court's reading of AR 850-04. Moreover, as a Step 3 Grievance Officer employed by the CDOC, DeCesaro is well-positioned to offer evidence concerning the specific types of grievances that fall within the purview of AR 850-04.[3]

It is undisputed that Plaintiff did not file any grievances regarding the May 2018 Shooting. However, DeCesaro states that Plaintiff filed three grievances—none of which pertain to Defendant's alleged use of excessive force on May 30, 2018—between May 1, 2018 and May 30, 2019. (*Id.* ¶ 18.) The fact that Plaintiff filed three other grievances within a year of the incident demonstrates that he was well familiar with the grievance procedures, and was not deterred or chilled in any way from utilizing that system.

3. Case Law

Also instructive here, the Tenth Circuit has found in two different unpublished opinions that the exhaustion requirement applies to circumstances that occur outside the prison, including a plaintiff's allegation of an assault at a county courthouse, *Forbes v. Garcia*, 696 F. App'x 381, 382 (10th Cir. 2017), and a plaintiff's challenge to the amount of compensation he received for work performed outside the prison, *Dmytryszyn*, 172 F.3d at 62. As unpublished orders of our Circuit these decisions are

---

[3] DeCesaro also states that "[t]o exhaust his administrative remedies under the CDOC's policies, Mr. Estrada was required to file Step 1, 2, and 3 grievances about this incident in accordance with the CDOC's procedural rules governing the grievance process." (ECF No. 65-2 ¶ 16.) This statement is a legal conclusion, and therefore, the Court does not rely on it to support this ruling.

not binding on this Court, but given the factual similarity of those cases to the facts presented here, their persuasive value cannot be denied.

Plaintiff does not acknowledge *Forbes* or *Dmytryszyn.* (*See* ECF No. 71) Instead, Plaintiff relies on *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54 (2d Cir. 2015), which he argues supports his theory that CDOC's grievance policy was not available to him because it does not cover incidents outside a CDOC facility. (ECF No. 71 at 9–10.) In *Hubbs*, the plaintiff brought a § 1983 action alleging that sheriff's deputies beat him while in a holding cell at a courthouse. *Hubbs*, 788 F.3d at 57. The deputies were not correction officers and did not work in the corrections division. *Id*. at 56–57. The applicable grievance procedure stated that issues outside of the warden's control were not subject to a grievance. *Id*. at 59. The court stated that defendants did not provide sufficient evidence that addressed whether the deputies fell within the warden's chain of command. *Id.* at 60–61. Therefore, the Second Circuit found that the defendants failed to meet their burden of establishing that the grievance procedures applied at the court holding facility where the plaintiff alleged he was beaten. *Id*. at 61.

As an initial matter, *Hubbs* is a Second Circuit opinion and is not binding on this Court. However, even if the Court were to consider *Hubbs*, the Court finds that it is readily distinguishable. The critical distinction is that the deputy sheriffs who allegedly beat the plaintiff in *Hubbs* were *not* correctional officers employed by the facility in which plaintiff was being held. Here, in contrast, it is undisputed that at the time of the incident, Plaintiff was an inmate with the CDOC and Defendant was a CDOC correctional officer. Unlike in *Hubbs*, therefore, there is no dispute in this case concerning whether any party was under the warden's control. Plaintiff also admits that

14

the CDOC provides inmates with administrative remedies pursuant to the three-step grievance process governed by AR 850-04.  (ECF No. 71 at 1 ¶ 6.)  He further admits that he never filed a grievance regarding the May 2018 Shooting.  (*Id.* at 4 ¶ 12.)  For all of these reasons, the Court does not find *Hubbs* persuasive.

It is true that the law recognizes an exception to the exhaustion requirement when administrative remedies are made unavailable in three circumstances: (1) when it is a dead end, where officers are unable or consistently unwilling to provide relief; (2) when it is so opaque that it is incapable of use and no ordinary prisoner can discern or navigate it; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross*, 578 U.S. at 643–44.  However, Plaintiff has failed to demonstrate that any of the three exceptions apply in this case.  In fact, as previously noted, he filed three grievances during the relevant time period.  He does not argue that the grievance process is a dead end or opaque, or that prison administrators thwarted him from using the grievance process.  (*See* ECF No. 71.)

Therefore, the Court finds that Plaintiff has failed to exhaust his administrative remedies and that Defendant is entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS that:

1. Defendant Jacoby Smart's Motion for Summary Judgment (ECF No. 65) is GRANTED;

2. This case is DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies;

3. The Clerk shall enter judgment in favor of Defendant Jacob Smart, and against Plaintiff Brian Estrada;

4. The parties shall bear their own attorney's fees and costs; and

5. The Clerk shall terminate this action.

Dated this 3rd day of May, 2023.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge